# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DOROTHY SNELL,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　**Case No. 6:04-cv-1275-Orl-18DAB**

**COMMISSIONER SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.**　　**Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on November 2, 1994 (R. 10), which was subsequently denied by a decision dated September 27, 1996. R. 613-20. Plaintiff then reapplied on December 19, 1996. R. 141-43. Plaintiff alleged an onset of disability on July 3, 1994

(R. 472) or June 1, 1995 (R. 141), due to back and leg pain. R. 481. While the second application was pending, the Appeals Council remanded the initial September 27, 1996 decision for lack of substantial evidence (R. 624-25) and Administrative Law Judge Paul Webster combined the two applications and issued a decision on October 1, 1998. R. 88-95. The Appeals Council then remanded the October 1998 decision on April 7, 2000, to better evaluate Plaintiff's past relevant work because Plaintiff's testimony conflicted with the record evidence. R. 97-98.

Administrative Law Judge William H. Greer (the "ALJ") was assigned the case and issued a new decision on the combined applications on April 17, 2001. R. 102-19. To make matters worse, the Administration was unable to locate Plaintiff's file[1] when the Appeals Council attempted to review the ALJ's April 2001 decision, so the Council was forced to remand the decision for the *third* time. R. 135-36. After recreating the record, the ALJ issued the decision currently on appeal on September 3, 2003, finding Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-24. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 6. The Appeals Council denied Plaintiff's request on June 24, 2004. R. 2-5. Plaintiff filed this action for judicial review on August 25, 2005. Doc. No. 1.

### B.    **Medical History and Findings Summary**

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of back and leg pain. R. 132, 171, 149, 481. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from chronic neck and back pain, which were "severe" medically determinable impairments, but not severe enough to meet or

---

[1] The organization of the current file is abysmal; page numbers in the index are not completed and there is no description whatsoever of the medical care provider records consisting of roughly 500 pages. It is no surprise that many of the medical records were lost in the course of the appeal. Plaintiff has not raised any issue regarding the state of the record.

medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R.  18. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, as she could lift ten pounds frequently, twenty pounds occasionally, and she could engage in prolonged sitting, standing, and walking in a workday. R. 19.  In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not supported by the objective medical evidence of record as set forth in the body of the decision.[2]  R. 19.  The ALJ also found that Plaintiff had no past relevant work.  R. 20.  Considering Plaintiff's vocational profile (tenth grade education), her age (48 years old), and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy.  R. 21 (citing 20 CFR § 404.1567).  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 22.

Plaintiff now asserts four points of error.  First,  Plaintiff contends the ALJ erred by finding that her mental impairment was not severe. Second, she claims the ALJ erred by finding she had the RFC to perform light work contrary to treating chiropractor's statements.  Third, she argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments.  Fourth, she asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility.  All issues are addressed, although not in the order presented by Plaintiff.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

---

[2] Within the body of the decision, the ALJ discredited Plaintiff's reported impairments based on several specific inconsistencies between her testimony, her stated daily activities, and examination findings which were essentially normal. R. 19.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *A. SEVERE MENTAL IMPAIRMENT*

The ALJ opined Plaintiff had no limitations from a mental impairment that would result in more than slight limitations in her activities of daily living, social functioning or in concentration, persistence or pace. R. 17. Plaintiff argues that the medical evidence reflected a severe mental

impairment from depression and mild retardation. The Commissioner contends that the ALJ properly rejected Plaintiff's single diagnosis of dysthymia from a consultative examination, which was not supported by the evidence and was contradicted by more recent reports.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Plaintiff contends that in her only psychological evaluation (court-ordered), conducted by Dr. Ames-Dennard, the results showed she suffered from Dysthmia, a significant mental impairment. Dr. Ames-Dennard diagnosed Plaintiff with Dysthmia, Chronic Type, noting that Plaintiff's speech was slow and constricted during the examination and her mood appeared to be depressed with blunt affect. R. 536. Academically, Plaintiff performed at elementary grade levels in reading and arithmetic, and scored in the mild range of mental retardation. R. 535. Plaintiff's thinking tended to be concrete and simplistic, she had slow mentation and labored speech, and her overall presentation was depressed and elusive. R. 535. Citing the Diagnostic and Statistical Manual's definition of Dysthmia, as "depressed mood for most of the day, for more days than not, and ongoing for at least two years," Plaintiff contends the ALJ should have found that she suffered from a severe mental disorder impacting her ability to work.

-5-

The Commissioner contends Plaintiff's diagnosis with Dysthymia was made only once, during a consultative examination in 1995, yet observations from consultative and examining psychologists after 1995 show that despite a one-time diagnosis, Plaintiff remained capable of performing activities of daily living without significant psychological functional impairments. Even Dr. Ames-Dennard, the psychologist who conducted the consultative examination, also reported that Plaintiff was "actively involved in church activities" and she "spends her day taking care of household chores such as cooking, shopping, and cleaning," without any mention of the functional limitations upon which the diagnosis was based. R. 534. The Commissioner also points to a more recent psychological examination conducted in 1996 reported that Plaintiff's GAF score was a 70-75, which is not indicative of a severe mental impairment. R. 252.

Plaintiff first started seeing a psychiatrist at the Apalachee Center for Human Services in October 1996, shortly after she was denied disability status the first time on September 27, 1996. R. 259. On October 22, 1996, she was diagnosed with adjustment disorder and individual counseling was recommended. R. 259. On November 18, 1996, she was diagnosed as "mildly depressed" but with good energy and she "appear[ed] to be suffering adjustment disorder related to financial and family pressures." R. 256. She told the psychiatrist that "social security told her she needed to see a counselor for eval[uation] because her disability was rejected." R. 254. The November 26, 1996 evaluation indicated that Plaintiff had a mood disorder and mild depression. R. 254. She was referred to different clinic and given Zoloft samples. R. 252. The psychiatrist noted that Plaintiff suffered from chronic back pain and had multiple financial, family problems, and was indigent. R. 252. Nevertheless, he assigned her a GAF score of 70-75. R. 252. Plaintiff also reported on August 25,

1997 to during treatment at the Neighborhood Health Services that her depression was helped by the Zoloft. R. 355.

No physician has suggested that Plaintiff had limitations related to depression. Based upon this evidence, the ALJ concurred with two reviewing state agency psychologists who opined that Plaintiff's mental impairments were not severe. R. 294 (March 3, 1997); 303 (January 14, 1997). After reviewing the records, Patrick Peterson, Ph.D, opined that Plaintiff "considers herself unemployable due to mixed physical problems and mood fluctuations. Other than self-report of some past out-patient treatment for 'nervous breakdowns' x 2-3 in previous years, any known psychological history is outpatient CMHC contact since 10/96 to address mild adjustment reaction secondary to pain/discomfort and intrafamilial/parent-child conflict. Continues to function capably in a full range of routine activities of daily living within her physical parameters. referral to vocational rehabilitation is recommended." R. 304 (abbreviations spelled out). A second reviewer, Dr. Bennett, noted Plaintiff reported performing the full range of activities of daily living, she had received no treatment either inpatient or outpatient until November 1996, and then sought counseling after her benefits were denied. R. 295. The GAF of 70-75 assigned at that time suggested "mild impairment/transient symptoms." R. 295. He noted Plaintiff "needed to continue with treatment and find employment – which would help mild depression." R. 295. It is apparent that the ALJ carefully considered this evidence in holding Plaintiff's mental impairment not severe[3]. The medical and other evidence support the ALJ's determination that Plaintiff did not suffer from a severe mental impairment.

### B. RFC AND THE CHIROPRACTOR'S OPINION

---

[3]The records from Lakeside Alternatives from September 2003 were submitted to the Appeals Council (R. 633-43) and were not before the ALJ. The Court looks only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence. *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

Plaintiff claims that the ALJ should not have found her able to perform work in light of the opinion of her chiropractor, Michael Atkinson. The Commissioner contends that the ALJ properly discounted the opinion of the chiropractor, who is not an acceptable treating source and whose opinion was not supported by the evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that her chiropractor's decision should be accorded weight even though it is not a medical doctor's opinion, citing *Barry v. Shalala*, 885 F. Supp. 1224, 1254 n.45 (N.D. Iowa 1995); *Schonewolf v. Callahan*, 972 F.Supp. 277, 286 (D.N.J. 1997). Plaintiff also argues that the ALJ erred in failing to discuss the chiropractor's opinion and postural limitations (occasional climbing

and frequent balancing, kneeling, crouching or crawling) placed upon her by the state agency physicians. R. 328.

The Commissioner properly contends that a chiropractor is not an acceptable medical source upon which the ALJ must rely, but is merely classified as another source of information that may be considered; the ALJ has the responsibility for assessing and determining RFC at the hearing level. *See* 20 C.F.R. §§ 416.913(d)(1) (statements from chiropractors *may* be considered by the ALJ).

In a detailed analysis, the ALJ did specifically address and reject Dr. Atkinson's report in his prior decision from April 17, 2001; this decision is applicable and relevant to the appeal because the case was remanded solely because the medical records were lost and not because of the merits of the decision. R. 111-12. The ALJ stated in pertinent part in the decision:

> There is a conflict in the evidence regarding the cause and the limiting effects of the claimant's back pain. Michael Atkinson, D.C., a chiropractor, stated in a letter dated October 31, 1997, that he first examined the claimant on April 15, 1997, for injuries sustained in an automobile accident which occurred on March 31, 1997. This is most likely the car accident that occurred in Orlando, Florida, that the claimant later described to a physician at Neighborhood Health Services. Dr. Atkinson stated that the claimant sustained permanent injuries and the MRI findings indicate a large disc herniation in the lumbar spine compromising the neural foramen. The MRI is not included with Dr. Atkinson's letter. However, an MRI report is included in medical records sent from Neighborhood Health Services. The MRI report indicates a large disc herniation as Dr. Atkinson states. Examining the MRI report, it can be seen that Dr. Atkinson referred the claimant to Richard A. Leverone, D.C., another chiropractor. Dr. Leverone signed the report at the bottom, under the diagnosis. [R. 364] It is evident that Dr. Leverone, a chiropractor, and not a medical doctor, interpreted the MRI and produced this report. Chiropractors are not listed in the applicable regulations as an acceptable source of medical evidence of an impairment. Reports from chiropractors may be used to explain how an impairment affects the ability to work where the impairment is established by acceptable medical evidence. There is no other medical evidence associated with this claim that establishes that the claimant in fact has a herniated disc at L4-5 or anywhere else, except where the claimant reported to an examining physician that she has a herniated disc and [he] duly notes that statement in the treatment notes. Dr. Atkinson, in his letter, estimates the claimant's impairment as 15% "as rated to the body as a whole." Dr. Atkinson also

>    completed a sedentary requirements checklist on November 11, 1997, expressing the opinion that the claimant cannot sit for 6 hours in a normal position and cannot be expected to attend any employment on an 8-hour, 5 days a week basis. Dr. Atkinson lists the claimant's impairment as "disc herniation lumbar spine." The administrative law judge finds that it is not established by acceptable medical evidence that the claimant has a herniated disc and that Dr. Atkinson's estimation of the claimant's degree of impairment and that this impairment prevents her from performing sedentary work is entitled to no weight.

R. 112.

Even assuming *arguendo* that using the more demanding analysis typically reserved for an acceptable medical source such as a physician, the chiropractor's opinion was properly rejected. The Commissioner argues that Dr. Atkinson's checklist form is inconsistent with his own records, such as his contemporaneous treatment notes from 1995 and the two conclusory letters to law firms involved in Plaintiff's accident litigation. Dr. Atkinson's contemporaneous treatment notes indicate improvement following Plaintiff's accident. R. 537-49. However, Atkinson opined in November 1997, two years after treating Plaintiff (from March 1995 to October 1995 (R. 537-45)), that Plaintiff could not be expected to attend any employment on an eight hour per day/five day per week basis and she could not sit for up to six hours in a normal position. R. 315. Dr. Atkinson's 1997 letter/report to one of the law firms reflects that Plaintiff's condition from two years before (in 1995) was not disabling and but rather was "intermittent and giving her occasional pain." R. 316. Atkinson provided no contemporaneous 1997 treatment notes to support the checklist or why Plaintiff's condition changed from only "occasional pain" to a disabling condition.

A state reviewing physician, in contrast to Dr. Atkinson's opinion, and in a more detailed Medical Source Statement of Ability to Do Work-Related Activities dated June 8, 2000, opined that Plaintiff's ability to sit, stand, or walk would not be affected by her impairment (R. 328), she would

be able to lift 50 pounds occasionally and 20 pounds frequently, and she could climb occasionally. R. 327-28. An MRI of the cervical spine on July 30, 2002 showed Plaintiff had mild osteophytic spurring off the posterior aspects of the vertebral bodies at C4-5 and C6-7 with mild canal narrowing at C4-5 and C6-7, with no evidence of cervical cord compression, which appeared normal in size, and no evidence of cervical cord compression. R. 419.

The ALJ rejected Dr. Atkinson's assessment on the grounds that it was not supported by acceptable medical evidence in the file. Dr. Williams' notes and Medical Source Statement and the other medical records do not support the extreme limitations reported by Dr. Atkinson; thus, good cause existed for the ALJ's failure to credit his opinion.

### *C. PAIN AND CREDIBILITY*

Plaintiff asserts that the ALJ erred in evaluating her back and neck pain due to a herniated nucleus pulposus. She also argues that the ALJ erred by rejecting her subjective complaints and finding she can perform light work. She contends that the objective medical records confirm the severity of her condition and demonstrate her credibility. The Commissioner contends that the ALJ accurately recounted the lack of credible restrictions or minimal restrictions imposed on Plaintiff by treating and examining physicians and psychologists.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

-11-

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 18. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately before discussing Plaintiff's RFC, the ALJ stated,

> The claimant's testimony regarding her limitations is not supported by the objective medical evidence of record. In th[is] regard, the evidence shows that the claimant's physical examinations have been essentially normal. Her gait and station have been unremarkable and she has been show[n] to have full muscle strength, and no evidence of atrophy or sensory loss. Medical diagnostic testing, including x-rays and MRI's and heart tests, have been essentially normal. There is no medical evidence, which shows

>she has an impairment, which would compromise her ability to perform light work activities. She does not suffer from any significant side effects of any medications and no treating or examining physician has indicated that she has limitations which would preclude light work. In actuality, it appears that the claimant is not motivated to work as it is indicated in medical progress notes that she "did not go to vocational rehabilitation because she doesn't want to work." Her activities of daily living are not significantly restricted and she engages in social activities, attending church twice a week, and performs routine household tasks, including vacuuming and grocery shopping. . . . In the present case, the claimant's complaints are entirely inconsistent with the medical reports of record, which show only minimal findings on examination and medical diagnostic tests. Thus, the undersigned concludes that the evidence shows the claimant's complaints of pain are only partially credible and she retains the ability to perform the range of light work set forth above.

R. 19.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that, contrary to the ALJ's determination, her physical examinations and MRI's had not been "essentially normal" (R. 19), but had shown "severe" findings. R. 320, 558. Ironically, one of the treatment notes cited by Plaintiff as a "severe" finding (R. 320) contains the note that Plaintiff's range of motion was decreased in all directions with "? exaggerated response." R. 320 (April 16, 2000). The second cite is to a 1995 letter of Dr. Atkinson to one of Plaintiff's lawyers regarding her slip and fall claim/injury. R. 558. The ALJ properly discredited the opinions and reports of the two chiropractors, Dr. Atkinson and Dr. Leverone, as explained in section B. R. 316-17, 364. Moreover, a contemporaneous report from June 20, 1996 done at Tallahassee Community

Hospital indicated that Plaintiff had very minimal degenerative change and normal height and alignment with disc spaces well maintained. R. 234.

The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. In the most telling evidence of Plaintiff's lack of credibility, the ALJ quotes from treatment records that Plaintiff "did not go to vocational rehabilitation because *she doesn't want to work*." R. 378 (October 21, 1999- emphasis added). In addition, the ALJ recognized that Plaintiff's activities of daily living are not significantly restricted at all and she engages in social activities, attending church twice a week, and performs routine household tasks, including vacuuming and grocery shopping. Plaintiff also managed to make at least one trip to Atlanta in 2002. R. 455. Moreover, Plaintiff describes her conditions in hyperbole. She repeatedly told treating physicians that she had suffered a "stroke" when in reality there were no clinical signs to suggest that she had had a stroke and her visual symptoms were the result of presbyopia, which could be accommodated with a simple pair of magnifying glasses sold at a discount store. R. 408; 403 ("she starts rambling and talking that she had a mini-stroke"). The inconsistencies between Plaintiff's reported limitations and the examination findings, as well as inconsistencies between her statements and her activities of daily living are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. Moreover, the ALJ's reasons are supported by substantial evidence.

### *D. APPLICATION OF THE GRIDS*

Plaintiff claims that because she suffered from back and neck pain with postural limitations and depression, she had nonexertional limitations, precluding the application of the grids and requiring VE testimony. The Commissioner contends that Plaintiff could perform a full range of light

-14-

work and the ALJ properly applied Rule 202.17 of the grids to direct a conclusion that Plaintiff was not disabled.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of

employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

In this case, the ALJ properly determined that Plaintiff did not suffer from a severe mental impairment. The ALJ considered Plaintiff's physical impairments, including back and neck pain, and properly assigned an RFC for light work. In arguing that VE testimony was necessary, Plaintiff again erroneously relies on the opinion of Dr. Atkinson that Plaintiff had a herniated disc and could not be expected to attend any employment for a fully work day, which the ALJ properly discredited as explained in section B. Plaintiff also contends that she had a limitation of being able to only occasional climb which should have been addressed by VE testimony.[4] R. 328. Contrary to Plaintiff's contentions, a review of the Emergency Room records indicates she has not "been hospitalized" because of low back pain and neck pain, although she has gone to the Emergency Room on a few occasions complaining of law back pain when she needed more pain medication or x-rays. *See, e.g.,* R. 223 (patient advised to make appointment on Monday"); 228; 235; 239 ("came here to get x-rays"). For the most part her visits to the Emergency Room have been for unrelated conditions such as toothaches or gallstones. *See, e.g.,* 227 (toothache); 233, 240, 242 (abdominal pain). Because Plaintiff could perform unlimited types of work at the light level, it was unnecessary to call a VE to establish whether she could perform work existing in the national economy. *See Foote*, 67 F.3d at 1559. Accordingly, the ALJ was justified in his reliance upon the grids. *See id.*

## *IV. CONCLUSION*

---

[4] There was effectively no limitation on Plaintiff's ability to balance, kneel, crouch or crawl, since Dr. Williams marked that she could do these activities frequently. R. 327-29.

The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 1, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record